### BATES v. DUNN. (No. 8915.)

Court of Civil Appeals of Texas. Galveston.
March 2, 1927.

**1. Joint adventures ⬳5(1)—Where one party to joint adventure disposed of note for individual benefit, other party should be awarded half its value rather than half interest in note.**

Where undisputed facts show that note to which defendant was entitled to half interest was disposed of by plaintiff for his individual benefit before suit, judgment should be reformed to give defendant recovery against plaintiff for one-half determined value of the note.

**2. Frauds, statute of ⬳56(5)—Defendant's oral agreement to retire from joint adventure, in which title to land was taken in his name, held invalid, within statute of frauds (Rev. St. 1911, art. 3965).**

Alleged oral agreement of defendant, in whom title to land was taken for purpose of resale, to retire from joint adventure on receipt of named consideration, *held* not available to plaintiff in trespass to try title, since agreement contravened Rev. St. 1911, art. 3965, pleaded in defense.

**3. Contracts ⬳113(1)—Contract to pool and divide realty commissions held not illegal or against public policy.**

Contract under which plaintiff was to purchase land from owner, take deed therefor in name of defendant, who would resell it, plaintiff to get a commission from seller and defendant commission from purchasers from him, which commissions were to be pooled and divided, *held* not illegal or violative of public policy.

Error from District Court, Harris County; Ewing Boyd, Judge.

Trespass to try title by T. C. Dunn, Jr., against C. F. Bates. To review the judgment rendered, defendant brings error. Reformed, and, as reformed, affirmed.

Cline & Waugh and A. M. Waugh, all of Houston, for plaintiff in error.

GRAVES, J. The parties herein will be called appellant and appellee, instead of as designated in the record.

The suit was by appellee against appellant, in regular form of trespass to try title, to recover 205.4 acres of land in Luke Hemenway script 181, in Harris county, Tex.; there was added a special plea, in substance to this effect: That the parties made a contract under which appellee was to purchase 1,600 to 1,900 acres of land from R. W. Knox, take a deed thereto in appellant's name, who would resell the same to W S. Jacobs and others, appellee to get a commission from Knox, appellant one from Jacobs, and they two would then pool these commissions with such profit as they also made from thus reselling the land for more than it cost from Knox, and divide the accretions equally between them; that, when it later developed that Jacobs could not purchase all the land so agreed to be bought from Knox, the parties here varied their arrangement by further agreeing that they would each contribute an equal amount and themselves buy the excess of the land not so taken by Jacobs and others; that thereafter appellant notified appellee that he could not put up his part of this purchase money, and in consequence further agreed to accept from him $500 for his interest in the entire transaction, and retire therefrom; that this modified agreement was carried out by appellee's paying appellant $300 of the $500, the remaining $200 thereof being tendered into court for his benefit, and by appellant's taking title to the land in his own name for the benefit of the appellee and by all of its being resold to Jacobs and others, except the 205.4-acre tract sued for; that accordingly the appellant held the same in trust for appellee, which result the court was asked to decree.

Appellant responded with a general demurrer, pleas of general denial, not guilty, failure of consideration, the statute of frauds, and substantially this further special matter: That he had never contracted with appellee to charge or receive any commissions from either Knox or Jacobs, and neither knew of nor was a party to representations to those persons concerning them, which, he averred, appellee had fraudulently made in order to effect a sale of all the 1,900 acres (inclusive of the 205.4 acres sued for) from the one to the other, and thereby collect a commission from each of them in so doing; that such scheme upon appellee's part was contrary to public policy and void, wherefore he prayed that the suit against him for the 205.4 acres be dismissed.

He further alleged in the alternative, in

---

⬳For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

event the court should find against him on his claim of illegality, that the profits involved in the purchase of all the land from Knox and its resale (except the 205.4 acres) to Jacobs and others were jointly owned in equal portions by himself and appellee, consisted of the 205.4 acres of left-over land in suit, one windmill, $1,200 in money, along with 49 head of cattle received from Knox as commissions, and a $1,350 note from Jacobs as part payment for some of the land bought by him, and all of them, other than the 205.4-acre tract of land which still remained in appellant's name, had been reduced by appellee to his individual possession and appropriated to his own use and benefit; his prayer in this connection was that all such returns be partitioned.

The cause went to the jury upon only one special issue, as follows:

"Do you find that prior to the conclusion of the various deals and the conveyance to Bates of the land in controversy, Bates had agreed with Dunn to accept from Dunn $500 in lieu of any gains to which he, Bates, might then or thereafter be entitled by virtue of the transactions in evidence?"

The jury answered "No" to this question, whereupon, after overruling a motion from each litigant for decree in his favor, the court upon this verdict and the evidence rendered judgment for partition between the two litigants of the 205.4 acres of land and the other profits resulting from the purchase of the land from Knox and their subsequent disposition, adjusted the equities between them accordingly, charging Dunn with the money, cattle, and other property he had received from Knox, charging Bates with $300 he had received from Dunn, and awarding the Jacobs $1,350 note to them equally as joint owners.

The writ of error sued out by Bates challenges the correctness of this determination below.

[1] After careful review of the record, we are unable to say there was error, except in one detail. Appellant should have had a recovery for one-half of the determined value of the Jacobs $1,350 note along with a lien against appellee's interest in the 205.4-acre tract of land to secure its payment, instead of the investiture in him of one-half interest in the note itself, because the undisputed evidence—indeed, the testimony of the appellee himself—showed that he had before the trial disposed of this note for his individual benefit exclusively.

The claims of both parties for exclusive ownership or possession of the 205.4 acres left over out of the purchase from Knox were properly denied, we think, upon these considerations.

[2] The jury's finding upon the special issue, which was sufficiently supported by the evidence, left the appellee without any such right to it; indeed, he could not have recovered upon his allegation of verbal sale to him of appellant's interest in the land for $500, because such agreement contravened the statute of frauds (R. S. 1911, article 3965), interposed in opposition to it.

[3] Appellant's claim of such fraud upon his adversary's part as vitiated the entire transaction and left him in possession of the land, free from any right of the appellee therein, was determined adversely to him, on the facts, by the trial court in the judgment rendered; we think this finding that there was no such fraud is amply supported by the evidence. In the various ramifications of the matter, the parties appear to have been working at cross-purposes, rather than attempting to perpetrate fraud upon each other. Neither Knox nor Jacobs is a party here, hence neither is making any complaint, and there was nothing inherently illegal or violative of public policy in the contract declared upon by the appellee, as between the immediate parties to it; if they wanted to so jointly engage in the buying and reselling of land as to enable themselves to realize agreed upon commissions both from sellers to and purchasers under them, there was nothing inimical to the public interest in it, and they had the right to do so; if, however, in carrying out the enterprise, either, in fact, practiced fraud upon the other, or the third persons, ample redress was available to the person wronged. The authorities appellant invokes as sustaining his contention that the contract herein declared upon was in its nature fraudulent, against public policy, and unenforceable by either party thereto, are therefore inapplicable.

Further discussion is deemed unnecessary; the trial court's judgment will here be so modified as to award appellant $675 and 6 per cent. annual interest thereon from March 6, 1924, until paid, together with a lien upon the appellee's interest in the 205.4 acres to secure its payment, in lieu of the one-half interest in the Jacobs $1,350 note itself, and, after being so reformed, will be affirmed.

Reformed and affirmed.